BILAL A. ESSAYLI
Acting United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
IAN V. YANNIELLO (Cal. Bar No. 265481)
Assistant United States Attorney
Chief, Terrorism and Export Crimes Section
HAOXIAOHAN CAI (Cal. Bar No. 331131)
Major Frauds Section
1500/1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-3667/0762
Facsimile: (213) 894-0141
E-mail: Ian.Yanniello@usdoj.gov
        Haoxiaohan.Cai@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>                v.<br><br>JASVEEN SANGHA,<br>    aka "Ketamine Queen,"<br><br>         Defendant. | No. CR 24-236-SPG(A)-1<br><br>GOVERNMENT'S MOTION *IN LIMINE* TO INTRODUCE DIRECT AND INEXTRICABLY INTERTWINED EVIDENCE; EXHIBITS A-C<br><br>Hearing Date: September 10, 2025<br>Location:      Courtroom of the<br>              Hon. Sherilyn Peace<br>              Garnett |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Ian V. Yanniello and Haoxiaohan Cai, hereby moves the Court in Limine for an order allowing the introduction at trial of direct and inextricably intertwined evidence pursuant to Federal Rules of Evidence 401 and 402.

This motion is based upon the attached memorandum of points and authorities and attached Exhibits A-C, the files and records in this

case, and such further evidence and argument the Court may wish to

consider at the hearing and in determining this matter.

On August 12, 2025, the government met and conferred with

defense counsel, who oppose the motion.

Dated: August 13, 2025            Respectfully submitted,

                                  BILAL A. ESSAYLI
                                  Acting United States Attorney

                                  CHRISTINA T. SHAY
                                  Assistant United States Attorney
                                  Chief, Criminal Division


                                  _____/s/_____
                                  IAN V. YANNIELLO
                                  HAOXIAOHAN CAI
                                  Assistant United States Attorneys

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES...............................................4

MEMORANDUM OF POINTS AND AUTHORITIES...............................6

I.    INTRODUCTION................................................6

II.   STATEMENT OF RELEVANT FACTS.................................7

      A.    Count Two Alleges That Defendant Sangha Operated a
            Stash House to Store, Manufacture, Package, and
            Distribute Controlled Substances......................7

      B.    Count Three Alleges that Defendant Sangha Distributed
            Ketamine to C.M. Shortly Before C.M.'s Overdose Death.....9

III.  LEGAL STANDARD.............................................10

IV.   ARGUMENT...................................................11

      A.    Evidence That Defendant Sangha Sold and Possessed with
            the Intent to Distribute Various Controlled Substances
            Is Direct Evidence of Count Two......................11

      B.    Evidence that C.M. Died of a Drug Overdose On the Same
            Day Defendant Sangha Distributed Ketamine to C.M. Is
            Direct Evidence of, and Inextricably Intertwined with,
            Counts Two and Three.................................15

      C.    Any Rule 403 Concerns Can Be Addressed By Limiting
            Instruction..........................................17

V.    CONCLUSION.................................................18

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

Cases

United States v. Blitz,
    151 F.3d 1002 (9th Cir. 1998) ..................................... 18

United States v. Broussard,
    589 F. Supp. 3d 1031 (D. Minn. 2022) ............................. 17

United States v. DeGeorge,
    380 F.3d 1203 (9th Cir. 2004) ..................................... 10

United States v. Loftis,
    843 F.3d 1173 (9th Cir. 2016) ............................. 10, 12, 15

United States v. Manning,
    56 F.3d 1188 (9th Cir. 1995) ...................................... 18

United States v. Mundi,
    892 F.2d 817 (9th Cir. 1989) ...................................... 13

United States v. O'Brien,
    601 F.2d 1067 (9th Cir. 1979) ..................................... 18

United States v. Parker,
    549 F.2d 1217 (9th Cir. 1977) ..................................... 18

United States v. Sayakhom,
    186 F.3d 928 (9th Cir. 1999) ...................................... 14

United States v. Shetler,
    665 F.3d 1150 (9th Cir. 2011) ...................................... 8

United States v. Smith,
    2024 WL 196936 (6th Cir. Jan. 18, 2024) .......................... 16

United States v. Soliman,
    813 F.2d 277 (9th Cir. 1987) ...................................... 10

United States v. Suetholz,
    2024 WL 4182903 (6th Cir. Sept. 13, 2024) ..................... 7, 16

United States v. Thomas,
    760 F. 3d 879 (8th Cir. 2014) ..................................... 13

United States v. Vizcarra-Martinez,
    66 F.3d 1006 (9th Cir. 1995) ............................. 7, 11, 15

4

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

United States v. Williams,
  989 F. 2d. 1061 (9th Cir. 1993) ................................... 17

Statutes

18 U.S.C. § 2(b) ..................................................... 9

Rules

Fed. R. Evid. 402.................................................... 10
Fed. R. Evid. 404(b)................................................. 10
Fed. R. Evid. 401.................................................... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

At trial, the government will introduce evidence to show that defendant Jasveen Sangha marketed herself as a Hollywood drug dealer, who, in her own words, sold to "a very vip circle of celebs and vip friends."  From the day she signed her lease in 2019 until her arrest in March 2024, defendant used her North Hollywood residence as a stash house and staging area for her drug business, where she stored drugs, manufactured drugs, packaged drugs, and repeatedly sold drugs.

The government hereby moves to admit the following evidence that is material, directly relevant, and inextricably intertwined with the charges in this case:

- That defendant used her North Hollywood residence to sell a multitude of controlled substances to her customers, including those seized from defendant's home in March 2024. Evidence concerning all the drugs defendant sold is direct proof of Count Two, which expressly charges that defendant used her North Hollywood residence "for the purpose of manufacturing, storing, and distributing **controlled substances** ...." FSI at 21 (emphasis added); and

- That C.M. died of a drug overdose after defendant sold ketamine to C.M. on August 26, 2019.  Although the FSI does not charge defendant with causing C.M.'s overdose, evidence of C.M.'s death is material, intrinsic proof that defendant distributed ketamine to C.M., as charged in Count Three.  For example, following C.M.'s death, a toxicology exam conducted with his autopsy confirmed that C.M. had ketamine in his blood at the time of his death. Further, C.M.'s death also caused a family member, K.M., to later investigate the overdose and find critical evidence related to defendant's August 26 distribution, including (1) two vials of ketamine defendant sold to C.M., (2) text messages between C.M. and defendant concerning the August 26 drug deal, (3) records on C.M.'s phone showing payments to defendant, including a $480 payment on August 26, and (4) no outgoing phone activity after the evening of August 26.  As further explained below, the jury will be confused --- and likely misled --- about the timeline of events and the recovery of key evidence if K.M.

is precluded from testifying that she took these actions because of, and after her brother's overdose death.  See, e.g., United States v. Vizcarra-Martinez, 66 F.3d 1006, 1013 (9th Cir. 1995) (evidence admissible if it is necessary for the government to "permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," and to "explain [] the circumstances under which particular evidence was obtained[.]");  United States v. Suetholz, 2024 WL 4182903, at *7 (6th Cir. Sept. 13, 2024) (evidence of two overdoses inextricably intertwined where, inter alia, the victims' deaths explained "why they were not witnesses at trial").

## II.   STATEMENT OF RELEVANT FACTS[1]

The FSI charges defendant with nine counts, including conspiracy to distribute ketamine (Count One), maintaining a drug-involved premises (Count Two), and multiple counts of distributing ketamine, including on August 26, 2019 to C.M. (Count Three).  The FSI further charges defendant with possession with the intent to distribute ketamine (Count Sixteen) and methamphetamine (Count Fifteen) on March 19, 2024 --- the date agents searched defendant's North Hollywood residence and found distribution quantities of numerous controlled substances, including MDMA, alprazolam (generic for Xanax), cocaine, among others.

Counts Two and Three are relevant to this motion and involve the following facts:

### A.   Count Two Alleges That Defendant Sangha Operated a Stash House to Store, Manufacture, Package, and Distribute Controlled Substances

As noted above, the FSI alleges substantive narcotics charges related to ketamine and methamphetamine.  Count Two, however, alleges that from the time defendant Sangha moved into her North Hollywood

---

[1] This recitation of facts reflects the anticipated testimony and related exhibits the government expects to elicit in its case-in-chief as relevant to this Motion.

residence (June 14, 2019), until the date of her arrest in March
2024, defendant maintained and used her residence to store,
manufacture, package, and distribute "***controlled substances***,
including methamphetamine ... and ketamine." (FSI at 21 (emphasis
added).) Among other things, the government bears the burden of
proving that "manufacturing, distributing, or using a controlled
substance is one of the primary or principal uses to which [defendant
Sangha's] residence [was] put." Ninth Circuit Model Instruction
12.18; see United States v. Shetler, 665 F.3d 1150, 1162 (9th Cir.
2011). "'Maintaining' a place includes facts showing that over a
period of time, the defendant directed the activities of and the
people in the place." Ninth Circuit Model Instruction 12.18.

At trial, the government seeks to introduce evidence,
including text messages, showing that defendant used her North
Hollywood residence as her homebase for a wide assortment of drug-
trafficking activity, including selling methamphetamine and ketamine,
as well as cocaine, MDMA, counterfeit Xanax, and other controlled
substances. Text messages will show that defendant regularly
directed customers to pick up their drugs from a lockbox outside of
her North Hollywood residence that defendant used for contactless
drug sales. Texts will also show defendant directed multiple
individuals, including Individual 1, to conduct defendant's drug
deals from the North Hollywood residence when she was out of town.

Consistent with the drug trafficking shown through text messages
and witnesses, the government intends to introduce evidence that law
enforcement searched defendant's residence in March 2024. Inside the
residence, agents found drug packaging materials, a money counting
machine, surveillance detection equipment, thousands of pressed

8

methamphetamine pills, ketamine in liquid, powder, and lollipop form, MDMA, cocaine, and other controlled substances.

### B. Count Three Alleges that Defendant Sangha Distributed Ketamine to C.M. Shortly Before C.M.'s Overdose Death

Count Three alleges that defendant sold ketamine to C.M. on August 26, 2019.[2]  C.M. was one of defendant Sangha's customers who traveled to her North Hollywood residence to purchase ketamine on multiple occasions, including August 26, 2019.  The same day, C.M. passed away, which the Los Angeles Medical Examiner-Coroner's office later determined was due to a mixed toxicology drug overdose. Ketamine was among the drugs found in C.M.'s bloodstream.[3]

Following C.M.'s death, a family member, K.M., traveled to C.M.'s residence approximately a week after C.M.'s death and found two empty vials of ketamine inside C.M.'s room.[4]  K.M. took custody of the vials and later received C.M.'s cell phone from the coroner's office, which K.M. then searched to investigate who had sold C.M. drugs before his death.  In doing so, K.M. found critical evidence related to defendant's alleged distribution of ketamine to C.M., including text messages between C.M. and defendant showing multiple drug deals leading up to August 26, 2019.  Among other things, the

---

[2] Count Two charges that defendant caused the drug transaction through an intermediary pursuant to 18 U.S.C. § 2(b).  As described above, because she was not physically present at the North Hollywood residence, defendant directed Individual 1 to sell vials of ketamine to C.M. on multiple occasions, including on August 26.

[3] Specifically, on September 1, 2019, the County of Los Angeles Department of the Medical Examiner-Coroner issued an autopsy report for Victim C.M. which listed his cause of death to include, among other things, acute ketamine toxicity.  On November 13, 2019, the coroner's office completed a toxicology report showing that several drugs, including ketamine, were found in Victim C.M.'s heart blood.

[4] Laboratory testing later confirmed the vials contained trace amounts of ketamine.

text messages show that in response to C.M. requesting to travel to defendant Sangha's North Hollywood residence to purchase ketamine on August 26, defendant Sangha confirmed she had ketamine to sell, stating, "I left [Individual 1] 4 . . . if u want them for 120 each take the 4." Text messages between C.M. and Individual 1 indicate that C.M. picked up the ketamine from defendant's North Hollywood residence. After receiving the drugs, C.M. sent an electronic payment of $480 to defendant using an electronic payment application.

**III. LEGAL STANDARD**

Relevant evidence is generally admissible unless excluded pursuant to statute or federal rule. Fed. R. Evid. 402. Evidence that is "inextricably intertwined" with charged conduct is admissible without regard to, and exempt from, the "other crimes" requirement of Federal Rule of Evidence 404(b).[5] <u>United States v. DeGeorge</u>, 380 F.3d 1203, 1220 (9th Cir. 2004); <u>United States v. Soliman</u>, 813 F.2d 277, 279 (9th Cir. 1987) ("Evidence should not be treated as 'other crimes' evidence when 'the evidence concerning the ['other'] act and the evidence concerning the crime charged are inextricably intertwined.'" (alteration in the original)). The exclusion of "inextricably intertwined" facts from the ambit of Rule 404(b) is because the evidence is "offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the excused." <u>United States v. Loftis</u>, 843 F.3d 1173, 1176 (9th Cir. 2016).

---

[5] Federal Rule of Evidence 404(b) permits the admission of "other crimes, wrongs or acts" for purposes of showing "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b).

The Ninth Circuit recognizes two kinds of inextricably intertwined evidence: (1) evidence which "constitutes a part of the transaction that serves as the basis for the criminal charge," and (2) evidence that is "necessary" to "permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995). With respect to the latter, the Ninth Circuit has held that "it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." Id. at 1013.

## IV. ARGUMENT

### A. Evidence That Defendant Sangha Sold and Possessed with the Intent to Distribute Various Controlled Substances Is Direct Evidence of Count Two

Evidence that defendant Sangha distributed a variety of controlled substances -- not just the sale of ketamine and/or methamphetamine -- from her North Hollywood residence is direct evidence proving Count Two.

First, Count Two expressly covers any and all controlled substances that defendant Sangha illegally sold from her North Hollywood residence. (See FSI at 21 (alleging "controlled substances, including methamphetamine ... and ketamine").) Thus, the government should be permitted to introduce evidence that defendant's residence was a central place for all of her drug dealing activities -- not just the sale of ketamine and/or methamphetamine -- and that the drugs she stored, maintained, sold, and distributed there included MDMA or ecstasy pills, Xanax, cocaine, and the other drugs she offered and sold during the relevant timeframe.

1    Second, even if Count Two only alleged specific controlled
2 substances (it doesn't), defendant's use of her residence as a stash
3 house and staging area for all of her drug trafficking activity is
4 admissible because the conduct is inextricably intertwined with Count
5 Two.  Indeed, courts routinely admit conduct -- even if not alleged
6 in the indictment -- when it is "part of the transaction that serves
7 as the basis for the criminal charge" or is otherwise "necessary" to
8 tell a "coherent and comprehensible story regarding the commission of
9 the crime." Loftis, 843 F.3d at 1178 (cleaned up).

10   Both justifications apply here.  Defendant sold multiple drugs
11 out of her North Hollywood residence, often in the same transaction,
12 making her drug dealing activities impossible to separate.
13 Specifically, to prove drug activity was one of the primary or
14 principal uses of the premises, the government must be permitted to
15 show the frequency and brazenness of defendant directing drug
16 customers to travel to the North Hollywood residence to buy drugs.
17 Those discussions involve defendant Sangha offering a panoply of
18 drugs for customers to pick up at her residence.  For example,
19 defendant would send price lists to customers that were not just
20 limited to her ketamine and methamphetamine offerings:



```
C Wash all flavors : 120/g
Regular
Strawberry
Grape
Coconut
Green apple
Cherry
Banana
Tucy (pink) 120/g
K jarred sealed 1g Dutch, German, ketaverse 160/g
Ketamine lollipops 100 mgs 20 each
Chocolate  Mushroom  bars 60-80 a bar
Dmt powder 100/g
Pressed mdma pills Legos and Guccis 20 each
MDMA Crystal 80/g
Xan bars 2mg 8 each
Addies 30mg 20 each
G 2oz glass jar sealed 160
```

28 (See Ex. A.)

12

In another communication with a drug customer, defendant's directions to pick up an order of ketamine vials from her North Hollywood residence is inextricably intertwined with, and inseparable from, the discussion of the multiple kinds of drugs she was selling:

| | |
|---|---|
| Drug Customer: | Do you have the redcap we talked about the other day |
| Defendant: | Orange and blue cap yes<br>180 liquid |
| Defendant: | …<br>Xan bars are 8 each<br>Addies 30<br>Pressed x 25 each<br>C 100 a g<br>Shrooms 60 for an 1/8th (I have to order from my guy he's usually pretty quick )<br>Acid 50 hits liquid in a droper for 500<br>That's what the pharmacy got right now lol |
| Drug Customer: | I'm just gonna do a vile [sic]. . . . |
| Defendant: | My addy is [North Hollywood residence]<br>Buzz 888 on callbox and come up to apt [Unit Number] and I'll leave it on doorstep |

(See Ex. B.)

These texts and others show defendant operated a single drug trafficking scheme out of her stash house that cannot be compartmentalized to the sale of particular drugs. See United States v. Thomas, 760 F. 3d 879, 884-85 (8th Cir. 2014) (holding that uncharged crack distribution was admissible because defendant so "blended his heroin and crack cocaine business together to the extent that it would be nearly impossible at times to separate the two"); cf. United States v. Mundi, 892 F.2d 817, 818 (9th Cir. 1989) (admitting evidence of several fraud victims not specifically mentioned in the indictment even though the indictment only discussed a single victim); United States v. Sayakhom, 186 F.3d 928, 933 (9th

Cir. 1999) (permitting evidence that defendant conducted fraud through a later, second entity that was not discussed in the indictment).

Additionally, to prove that defendant "maintained" the North Hollywood residence for drug purposes, the government must be allowed to show that "over a period of time, the defendant directed the activities of and the people in the place." Among other things, the government expects to offer evidence that defendant would direct co-conspirators, including Individual 1, to sell defendant's drugs from the North Hollywood residence when defendant was not there. These conversations, too, include defendant's discussion of multiple drugs she had available for sale. (See Ex. C (defendant and Individual 1 discussing, in coded language, MDMA pills, counterfeit Adderall pills pressed with methamphetamine ("the add"), and ketamine, with defendant giving directions to Individual 1 to put ketamine in defendant's lockbox at the North Hollywood residence so that a drug customer of defendant's could pick up his order).)

Just as text messages establish that defendant Sangha sold multiple drugs from her North Hollywood residence, the drugs federal agents seized when they searched her unit support the same conclusion. On March 19, 2024, federal agents seized over 3,000 pressed methamphetamine pills, liquid and powered ketamine, cocaine, MDMA, alprazolam, clonazepam, among other controlled substances.

In short, defendant used her residence as a stash house and staging ground for her drug trafficking business --- all of it. Count Two is not, and should not be, limited to defendant's sale of particular controlled substances.

**B.    Evidence that C.M. Died of a Drug Overdose On the Same Day Defendant Sangha Distributed Ketamine to C.M. Is Direct Evidence of, and Inextricably Intertwined with, Counts Two and Three**

Evidence related to C.M.'s overdose death is directly relevant and necessary to prove that defendant Sangha distributed ketamine to C.M. on August 26, 2019 (Count Three).

First, evidence that C.M. died of an overdose on August 26, 2019, is necessary to tell a "coherent and comprehensible story regarding the commission of the crime." Vizcarra-Martinez, 66 F.3d at 1013.  It is only because C.M. died that the Los Angeles County Medical Examiner tested C.M.'s heart blood and determined it contained ketamine.  The presence of ketamine in C.M.'s blood on the day that he died -- the same day that defendant distributed ketamine to him -- goes directly to prove the elements of the distribution charged in Count Three.  Indeed, as in Loftis, it is an intrinsic fact "offered as direct evidence of the fact in issue, not as circumstantial evidence requiring an inference as to the character of the excused."  843 F.3d at 1176.

Second, explaining C.M.'s death to the jury is also necessary to avoid juror confusion and misleading the jurors by creating an unexplainable evidentiary void. See Vizcarra-Martinez, 66 F.3d at 1013 (internal quotations omitted) (noting a jury "cannot be expected to make its decision in a void – without knowledge of the time, place, and circumstances of the acts which form the basis of the charge.").  Specifically, the evidence is necessary to explain (1) why K.M. traveled across states to C.M.'s residence a week after defendant allegedly sold drugs to C.M., and (2) why she seized and searched for critical evidence about who delivered the drugs to C.M.,

1  including seizing two empty ketamine vials from C.M.'s room.[6]  See

2  United States v. Smith, 2024 WL 196936, at *2 (6th Cir. Jan. 18,

3  2024) (holding that "testimony regarding the [uncharged] fatal

4  overdose completes the story of the charged offenses by explaining

5  why law enforcement began investigation Smith" and was not Rule

6  404(b) evidence).

7      To blind the jury of C.M.'s death would create confusion and

8  doubt about the facts that are not, and should not be, in dispute.

9  For example, if the jury is only presented with evidence that

10  defendant sold ketamine to C.M. on August 26 and that K.M. found two

11  ketamine vials approximately a week later in early September, jurors

12  will wonder what C.M. did during that timeframe and question whether

13  the vials were provided by another potential source of supply.

14  Permitting the government to present evidence that C.M. died on the

15  same day defendant sold him ketamine will prevent this confusing and

16  false narrative at trial.  See United States v. Suetholz, 2024 WL

17  4182903, at *7 (6th Cir. Sept. 13, 2024) (evidence of the overdose

18  deaths of two victims who supported distribution counts, but whose

19  deaths were not charged, was admissible as "inextricably intertwined

20  with the offenses charged" because it explained "why they were not

21  witnesses at trial").

22      Moreover, courts have upheld introduction of the overdoses of

23  uncharged victims as inextricably intertwined and necessary to

24

25  _____

26     [6] Among other things, the government expects that K.M. will
testify that following C.M.'s death, she searched C.M.'s phone and
identified text messages between C.M. and defendant Sangha about

27  setting up the August 26, 2019 drug deal.  K.M. also found electronic
payments from C.M.'s Venmo account to an account controlled by

28  defendant Sangha that showed a $480 payment on the date of the
suspected drug transaction.

provide context and to "complete the story."  United States v. Broussard, 589 F. Supp. 3d 1031, 1037–38 (D. Minn. 2022).  In Broussard, the court allowed evidence that two victims who were otherwise not charged in any overdose or distribution counts, had "suffered near-fatal fentanyl overdoses" after receiving envelopes from defendant's delivery service, because their evidence was "intrinsic" to the fentanyl conspiracy charged.  Id.  Here, evidence of C.M.'s overdose is even more essential to complete the story because, unlike Broussard, Count Three of the FSI charges the very distribution that contributed to C.M.'s overdose.  That defendant was not additionally charged with a death-resulting count due to C.M.'s mixed toxicology should not limit the proof the government may introduce of C.M.'s death.  United States v. Williams, 989 F. 2d. 1061, 1070 (9th Cir. 1993) (uncharged conduct does not "become other acts [subject to exclusion under Rule 404(b)] simply because the defendant is indicted for less than all [her] actions") (cleaned up).

    For all of these reasons, evidence that C.M. passed away on the same day defendant caused the distribution of ketamine to C.M. should be admitted at trial.

### C.    Any Rule 403 Concerns Can Be Addressed By Limiting Instruction

    Applying the Rule 403 balancing test to this evidence, the probative value of the proffered evidence far outweigh the risk of unfair prejudice.  As discussed above, the proffered evidence is material to prove the charges in this case and necessary to tell a coherent story and avoid juror confusion.  The Ninth Circuit has consistently observed that there is a distinction between evidence that is prejudicial and that which is unfairly prejudicial.  See

<u>United States v. Parker</u>, 549 F.2d 1217, 1222 (9th Cir. 1977) (noting evidence "is not rendered inadmissible because it is of a highly prejudicial nature . . . . The best evidence often is." (citation omitted)); <u>see also</u> <u>United States v. Blitz</u>, 151 F.3d 1002, 1009 (9th Cir. 1998) ("[E]ven if . . . [404(b)] evidence resulted in some prejudice (and all unfavorable evidence about a defendant does), it was not 'unfair prejudice' and did not 'substantially outweigh' the high probative value of the evidence.").

Finally, a limiting instruction would substantially alleviate any concerns of unfair prejudice.  <u>See, e.g.,</u> <u>United States v. O'Brien</u>, 601 F.2d 1067, 1070 (9th Cir. 1979) ("Limiting instructions may reduce or eliminate prejudice which would otherwise occur."); <u>United States v. Manning</u>, 56 F.3d 1188, 1197 (9th Cir. 1995) (evidence of prior bombing conviction admissible in trial for murder by mail bomb; limiting instruction indicated that court conducted balancing).

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court permit the government to introduce evidence of (1) all drugs defendant dealt and manufactured at her North Hollywood residence from June 14, 2019 to March 19, 2024, and (2) Victim C.M.'s toxicology results and his death on or about August 26, 2019, as intrinsic to and inextricably intertwined with the charged offenses.

# Exhibit A



From: ████4882@s.whatsapp.net, Jasveen S. (owner)
To: ██████ @s.whatsapp.net ████ L

C Wash all flavors : 120/g
Regular
Strawberry
Grape
Coconut
Green apple
Cherry
Banana

Tucy (pink) 120/g

K jarred sealed 1g Dutch, German, ketaverse 160/g

Ketamine lollipops 100 mgs 20 each

Chocolate Mushroom bars 60-80 a bar

Dmt powder 100/g

Pressed mdma pills Legos and Guccis 20 each

MDMA Crystal 80/g

Xan bars 2mg 8 each

Addies 30mg 20 each

G 2oz glass jar sealed 160

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ @s.whatsapp.net ████ | 5/4/2023 6:30:00 PM(UTC-7) | 5/4/2023 6:37:04 PM(UTC-7) | |

Status: Read
Platform: Mobile

5/4/2023 6:29:59 PM(UTC-7)



From: System Message System Message
Messages and calls are end-to-end encrypted. No one outside of this chat, not even WhatsApp, can read or listen to them. Tap to learn more
Platform: Mobile
Label: System

5/4/2023 6:29:59 PM(UTC-7)

From: ████ @s.whatsapp.net ████ L
I have addy and k
Status: Read
Platform: Mobile

5/4/2023 6:37:25 PM(UTC-7)

From: ████ @s.whatsapp.net ████ L
I need press pills Molly and tucy and Chocolate bar
Status: Read
Platform: Mobile

5/4/2023 6:38:02 PM(UTC-7)

21076

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

# Exhibit B



From:
To: ____ p391 _$!<Other>!$_ (owner)

Do you have the redcap we talked about the other day?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| 6391 _$!<Other>!$_ | | 3/25/2020 4:21:44 PM(UTC-7) | |

**Status:** Read

3/25/2020 4:21:44 PM(UTC-7)



From: 6391 _!<Other>!$_ (owner)
To:

Orange and blue cap yes

| Participant | Delivered | Read | Played |
|---|---|---|---|
| | 3/25/2020 4:21:58 PM(UTC-7) | | |

**Status:** Sent

3/25/2020 4:21:58 PM(UTC-7)



From: 6391 _$!<Other>!$_ (owner)
To:

180 liquid

| Participant | Delivered | Read | Played |
|---|---|---|---|
| | 3/25/2020 4:22:04 PM(UTC-7) | | |

**Status:** Sent

3/25/2020 4:22:04 PM(UTC-7)



From:
To: p391 _$!<Other>!$_ (owner)

Oh shit

| Participant | Delivered | Read | Played |
|---|---|---|---|
| 6391 _$!<Other>!$_ | | 3/25/2020 4:22:15 PM(UTC-7) | |

**Status:** Read

3/25/2020 4:22:15 PM(UTC-7)

4315

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00008835



From: ████████ ▄391_$!<Other>!$_ (owner)
To: █████████

I thought it was 150?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████8391 _$!<Other>!$_ | | 3/25/2020 4:22:20 PM(UTC-7) | |

Status: Read

3/25/2020 4:22:20 PM(UTC-7)



From: ████████91_$!<Other>!$_ (owner)
To: ████████

U have no idea what I had to go through with the border closing

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ F | 3/25/2020 4:22:47 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:22:46 PM(UTC-7)



From: ████████8391_$!<Other>!$_ (owner)
To: ████████ F

I paid all upfront in cash and surcharge to get it fast

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████2199 F | 3/25/2020 4:23:08 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:23:08 PM(UTC-7)



From: ████████8391_!<Other>!$_ (owner)
To: ████████

Nothing is coming over for months

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████2199 F | 3/25/2020 4:23:16 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:23:15 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00008836



From: ████████6391_$!<Other>!$_ (owner)
To: ████████

It's been a shit show

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ F | 3/25/2020 4:23:30 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:23:30 PM(UTC-7)



From: ████████391_$!<Other>!$_ (owner)
To: ████████ F

Xan bars are 8 each
Addies 30
Pressed x 25 each
C 100 a g
Shrooms 60 for an 1/8th( I have to order from my guy he's usually pretty quick )
Acid 50 hits liquid in a dropper for 500

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ F | 3/25/2020 4:25:42 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:25:42 PM(UTC-7)



From: ████████6391_$!<Other>!$_ (owner)
To: ████████199 F

That's what the pharmacy got right now lol

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ F | 3/25/2020 4:25:59 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:25:59 PM(UTC-7)



From: ████████
To: ████████6391_$!<Other>!$_ (owner)

Ok I'm just gonna do a vile

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████6391_$!<Other>!$_ | | 3/25/2020 4:26:49 PM(UTC-7) | |

Status: Read

3/25/2020 4:26:49 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER



From: ▓▓▓6391_$!<Other>!$_ (owner)
To: ▓▓▓▓▓▓ ▓

Kk

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓▓ ▓ | 3/25/2020 4:27:01 PM(UTC-7) | | |

**Status:** Sent

3/25/2020 4:27:00 PM(UTC-7)



From: ▓▓▓▓6391_$!<Other>!$_ (owner)
To: ▓▓▓▓▓ ▓

Blue or orange cap

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓2199 F ▓ | 3/25/2020 4:27:15 PM(UTC-7) | | |

**Status:** Sent

3/25/2020 4:27:15 PM(UTC-7)



From: ▓▓▓▓▓▓ ▓
To: ▓▓▓▓▓91_$!<▓ner>!$_ (owner)

Light blue or dark?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓6391 >!$_ | | 3/25/2020 4:27:50 PM(UTC-7) | |

**Status:** Read

3/25/2020 4:27:50 PM(UTC-7)



From: ▓▓▓▓6391__!<Other>!$_ (owner)
To: ▓▓▓

My addy is ▓▓▓▓▓▓▓

Buzz 888 on callbox come up to apt ▓ and I'll leave it on doorstep

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓▓ | 3/25/2020 4:28:04 PM(UTC-7) | | |

**Status:** Sent

3/25/2020 4:28:04 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00008838



From: ████████ 6391 _$!<Other>!$_ (owner)
To: ████████ F

There's only one blue cap

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████2199 F | 3/25/2020 4:28:22 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:28:22 PM(UTC-7)



From: ████████ █
To: ████████ 6391 _$!<Other>!$_ (owner)

Which ever one is better on allergies and more psychedelic

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████6391 _$!<Other>!$_ | | 3/25/2020 4:28:26 PM(UTC-7) | |

Status: Read

3/25/2020 4:28:25 PM(UTC-7)



From: ████████ 6391 _$!<Other>!$_ (owner)
To: ████████ █

Cheminova

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ F | 3/25/2020 4:28:27 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:28:27 PM(UTC-7)



From: ████████ █
To: ████████ 6391 _$!<Other>!$_ (owner)

Orange?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████6391 _$!<Other>!$_ | | 3/25/2020 4:28:37 PM(UTC-7) | |

Status: Read

3/25/2020 4:28:37 PM(UTC-7)

4319

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00008839



From: ██████ 6391_$!<Other>!$_ (owner)
To: ████████

Orange cap is anasket

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ | 3/25/2020 4:28:42 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:28:42 PM(UTC-7)



From: ████████
To: ████████ 6391_$!<Other>!$_ (owner)

What's the main difference between them?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 6391 _$!<Other>!$_ | | 3/25/2020 4:28:55 PM(UTC-7) | |

Status: Read

3/25/2020 4:28:55 PM(UTC-7)



From: ████ 6391_$!<Other>!$_ (owner)
To: ████████

Anesket¨

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ | 3/25/2020 4:28:58 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:28:58 PM(UTC-7)



From: ████ 6391_$!<Other>!$_ (owner)
To: ████████

Everyone is different .... they are scientifically different isomers

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ | 3/25/2020 4:29:27 PM(UTC-7) | | |

Status: Sent

3/25/2020 4:29:26 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00008840

# Exhibit C









CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007904



From: ████████ L
To: ████ 9721 (owner)

Yes

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/202 1 12:27:11 PM(UTC -7) | |

**Status:** Read

8/30/2021 12:25:22 PM(UTC-7)



From: ████████ L
To: ████ 9721 (owner)

20 left

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/202 1 12:27:11 PM(UTC -7) | |

**Status:** Read

8/30/2021 12:25:29 PM(UTC-7)



From: ████████ L
To: ████ 2 wn

right?

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/202 1 12:28:39 PM(UTC -7) | |

**Status:** Read

8/30/2021 12:28:14 PM(UTC-7)



From: ████████ L
To: ████ 9721 (owner)

Not the add

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/202 1 12:28:39 PM(UTC -7) | |

**Status:** Read

8/30/2021 12:28:26 PM(UTC-7)

3385

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER          USAO_00007905









CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007906



From: ██████9721 (owner)
To: ████████ L ████

Not sure the content on them

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ L | 8/30/2021 12:30:08 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 12:30:07 PM(UTC-7)



From: ██████9721 (owner)
To: ████████ L ████

Let me find out

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ L | 8/30/2021 12:30:12 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 12:30:12 PM(UTC-7)



From: ████ 49721 (owner)
To: ████ 763 L

Ok ████ will grab them from you tomorrow … finding out what time and then I told him to dial 999

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ L | 8/30/2021 12:34:42 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 12:34:42 PM(UTC-7)



From: ██████9721 (owner)
To: ████████ L ████

He taking all 20

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ L | 8/30/2021 12:34:52 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 12:34:51 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007907



From: ███████ L
To: ███ 9721 (owner)

K

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███ 9721 | | 8/30/2021 12:35:02 PM(UTC-7) | |

Status: Read

8/30/2021 12:35:02 PM(UTC-7)



From: ███ 9721 L (owner)
To: ███ 763 L

You don't have anyone else that wants them do you? Because I'm discounting to 18 each for him

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███████ L | 8/30/2021 12:35:15 PM(UTC-7) | | |

Status: Sent

8/30/2021 12:35:15 PM(UTC-7)



From: ███████ L
To: ███ 9721 (owner)

Not that I know of

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███ 9721 | | 8/30/2021 12:35:26 PM(UTC-7) | |

Status: Read

8/30/2021 12:35:25 PM(UTC-7)



From: ███ 9721 L (owner)
To: ███ L

Kk

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███████ L | 8/30/2021 12:35:29 PM(UTC-7) | | |

Status: Sent

8/30/2021 12:35:29 PM(UTC-7)

3388

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007908



From: ████████ 9721 (owner)
To: ████ █ ████

Might as well flip it I'm back the next day

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ █ | 8/30/2021 12:35:45 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 12:35:45 PM(UTC-7)



From: ████████ █
To: ████ 9721 (owner)

Liked "Might as well flip it I'm back the next day"

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/2021 12:43:32 PM(UTC-7) | |

**Status:** Read

8/30/2021 12:35:55 PM(UTC-7)

From: ████████ █
To: ████ 9721 (owner)

Perfect

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/202 1 12:43:32 PM(UTC-7) | |

**Status:** Read

8/30/2021 12:35:57 PM(UTC-7)



From: ████ 9721 (owner)
To: ████████ █

He said tomorrow 4pm ish

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████████ █ | 8/30/2021 1:00:06 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:00:05 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007909



From: ████ L
To: ████ 9721 (owner)

K

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/2021 1:00:22 PM(UTC-7) | |

**Status:** Read

8/30/2021 1:00:21 PM(UTC-7)



From: ████ 9721 (owner)
To: ████ L

360 total he owes

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ L | 8/30/2021 1:00:26 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:00:25 PM(UTC-7)



From: ████ L
To: ████ 2 wn

Liked "360 total he owes "

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ 9721 | | 8/30/2021 1:00:42 PM(UTC-7) | |

**Status:** Read

8/30/2021 1:00:32 PM(UTC-7)



From: ████ 721 wner)
To: ████ L

I'll be asleep by then since I'll have my flight to catch the next morning

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ L | 8/30/2021 1:01:04 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:01:04 PM(UTC-7)

3390

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007910



From: ███████ l
To: ███ 9721 (owner)

Have him text me

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███ 9721 | | 8/30/2021 1:01:22 PM(UTC-7) | |

**Status:** Read

8/30/2021 1:01:12 PM(UTC-7)



From: ███ 9721 (owner)
To: ███ l ███

We will just do it like this

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███ l | 8/30/2021 1:01:30 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:01:29 PM(UTC-7)



From: ███ 9721 (owner)
To: ███ l ███

If u want u can just lockbox it

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███ l | 8/30/2021 1:01:40 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:01:40 PM(UTC-7)



From: ███████ l
To: ███ 9721 (owner)

Ok

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ███ 9721 | | 8/30/2021 1:01:45 PM(UTC-7) | |

**Status:** Read

8/30/2021 1:01:45 PM(UTC-7)

3391

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007911



From: ████ L████
To: ████ 9721 (owner)

I'll be home

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████9721 | | 8/30/2021 1:01:52 PM(UTC-7) | |

**Status:** Read

8/30/2021 1:01:52 PM(UTC-7)



From: ████ 9721 (owner)
To: ████ L████

Black lock box is 000

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████ L | 8/30/2021 1:01:56 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:01:55 PM(UTC-7)



From: ████ 9721 (owner)
To: ████ ████

I'll tell him if there's a box there just to use that code and leave cash in there

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████4763 L████ | 8/30/2021 1:02:23 PM(UTC-7) | | |

**Status:** Sent

8/30/2021 1:02:23 PM(UTC-7)



From: ████ L████
To: ████ 9721 (owner)

K

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ████9721 | | 8/30/2021 1:02:33 PM(UTC-7) | |

**Status:** Read

8/30/2021 1:02:29 PM(UTC-7)

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007912



From: ▓▓▓▓▓▓ L
To: J▓▓▓▓ 9721 (owner)

For J▓▓▓ I'm gonna leave it in the lockbox

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓ 9721 | | 8/31/202 1 1:07:00 PM(UTC-7) | |

Status: Read

8/31/2021 11:54:13 AM(UTC-7)



From: ▓▓▓▓ 721 (owner)
To: ▓▓▓▓ L

Ok done I let him know

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓▓ L | 8/31/2021 1:07:12 PM(UTC-7) | | |

Status: Sent

8/31/2021 1:07:05 PM(UTC-7)



From: ▓▓▓▓ 9721 (owner)
To: ▓▓▓▓ L

He will dial 999

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓▓ L | 8/31/2021 1:07:12 PM(UTC-7) | | |

Status: Sent

8/31/2021 1:07:08 PM(UTC-7)



From: ▓▓▓▓ 9721 (owner)
To: ▓▓▓▓ L

He will send it digital to me

| Participant | Delivered | Read | Played |
|---|---|---|---|
| ▓▓▓▓▓ L | 8/31/2021 1:08:30 PM(UTC-7) | | |

Status: Sent

8/31/2021 1:08:29 PM(UTC-7)

3393

CONFIDENTIAL INFORMATION –
SUBJECT TO PROTECTIVE ORDER

USAO_00007913