**DEBRA WHITE CRIMINAL
DEFENSE SPECIALISTS**
Debra S. White (SBN 202778)
26565 Agoura Rd, Ste 200
Calabasas, CA 91302
debra@dwhitecriminaldefense.com

**LAW OFFICES OF KAREN L. GOLDSTEIN**
Karen L. Goldstein (SBN 229965)
1800 Vine Street
Los Angeles, CA 90028
kgoldstein@klgcriminaldefense.com

Attorneys for Defendant
SALVADOR PLASENCIA

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. CR 24-236(A)-SPG-2 |
| Plaintiff, | **DEFENDANT SALVADOR PLASENCIA'S OBJECTIONS TO THE PRESENTENCE REPORT** |
| v. | |
| SALVADOR PLASENCIA, | **FILED UNDER SEAL** |
| Defendant. | |
| | **Before the Honorable Sherilyn Peace Garnett** |

TO THE HONORABLE JUDGE GARNETT AND ASSISTANT UNITED STATES ATTORNEYS IAN YANNIELLO AND HAOXIAOSHAN CAI:

Defense counsel, Debra S. White and Karen L. Goldstein, on behalf of Salvador Plasencia, hereby submit Defendant Salvador Plasencia's Objections to the Presentence Report.

Dated: November 5, 2025

Respectfully submitted,
*/s/ Debra S. White*
DEBRA S. WHITE
KAREN L. GOLDSTEIN
Attorneys for Salvador Plasencia

**TABLE OF CONTENTS**

I.    INTRODUCTION…………………………………………………………………….1

II.   OBJECTIONS TO THE GUIDELINE FACTORS AND CALCULATION……………....…..1

      A.  Mr. Plasencia's Statement Regarding His Acceptance of Responsibility
          Should Be Included in the PSR……………………………………………....…1

      B.  The PSR Incorrectly Analyzes and Expands the "Jointly Undertaken Criminal
          Activity" Standard for Determining Relevant Conduct in This Case………..…1

          1. Scope is Defendant-Specific and not Coextensive with the Conspiracy…........2

          2. Foreseeability Alone is Insufficient……………………..…………..…...2

      C.  The PSR Incorrectly Analyzes Count Group 1 as Distribution of Ketamine
          *Resulting in Death* Which Mr. Plasencia Did Not Plead Guilty to …….…..…3

      D.   Mr. Plasencia Qualifies for Safety Valve Relief (U.S.S.G. § 5C1.2)....…….....…3

      E.   Mr. Plasencia Should Also Receive a Two-Level Reduction for Minor Role
          Under  U.S.S.G. § 3B1.2(b)……..…………...…………………………………4

      F.   The PSR Applies a Two-Level Obstruction Enhancement for Obstruction of
          Justice Which Would Constitute Double Counting for Conduct Already
          Accounted for in the Pseudo Count……...……………………………………..6

      G.   Mr. Plasencia is a True Zero Point Offender and Should Receive a Two-Level
          Reduction Under §4 C1.1…....………………………………………...…….7

III.  FACTUAL INACCURACY TO BE CORRECTED AND OBJECTION TO
      FINE .………………………………………………………………….………7

      A.   Location of Malibu Canyon Urgent Care…..…………………………………7

      B.   Mr. Plasencia is No Longer a Practicing Doctor and is in Serious Debt………8

IV.   CONCLUSION……………………………………………………………..8

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

On October 22, 2025, U.S. Probation disclosed a Presentence Report ("PSR") for Defendant Salvador Plasencia. Defense counsel respectfully submit the following objections and requests for corrections to the PSR. These objections address factual inaccuracies, corrections to the guideline calculation, and omissions that materially affect the recommended sentencing range.

## II. OBJECTIONS TO THE GUIDELINE FACTORS AND CALCULATION

### A. Mr. Plasencia's Statement Regarding His Acceptance of Responsibility Should Be Included in the PSR

The PSR does not include the written statement that Mr. Plasencia submitted with his presentence forms regarding his acceptance of responsibility. Instead, the PSR states: "On October 6, 2025, Plasencia was interviewed via video conference with defense counsel present. Plasencia adopted the factual basis in the Plea Agreement as his statement of acceptance of responsibility." (PSR, p. 8, ¶ 38). Mr. Plasencia is deeply remorseful for his conduct in this case, is currently preparing a more detailed statement for his allocution, and requests that the written statement he already submitted to U.S. Probation be included in the PSR.

### B. The PSR Incorrectly Analyzes and Expands the "Jointly Undertaken Criminal Activity" Standard for Determining Relevant Conduct in This Case

The PSR treats ketamine distribution by other individuals who he has never met, and did not know, as relevant conduct on the grounds that it was within the scope of a jointly undertaken criminal activity, in furtherance of that activity, and reasonably foreseeable. (PSR, p. 9 ¶ 41). This analysis misapplies § 1B1.3 and incorrectly expands the scope of Mr. Plasencia's relevant conduct.

3

Under U.S.S.G. § 1B1.3(a)(1)(B), when the government seeks to attribute others' acts to a defendant in a jointly undertaken criminal activity, it must prove all three prerequisites: (1) the acts were within the scope of the jointly undertaken criminal activity; (2) the acts were in furtherance of that activity; and (3) the acts were reasonably foreseeable. *See United States v. Ortiz*, 362 F.3d 1274, 1276–78 (9th Cir. 2004) (requiring conjunctive findings); *U.S.S.G.* § 1B1.3 cmt. n.3(A)-(B) (U.S. Sent'g Comm'n 2025); *U.S.S.G.* supp. app. C, amend. 790 (U.S. Sent'g Comm'n 2015) (clarifying the three-step, scope-first analysis).

Two controlling points flow from this analysis:

### 1. Scope is Defendant-Specific and not Coextensive with the Conspiracy.

The Guidelines do not make a defendant automatically accountable for the conduct of members of a conspiracy, and the court must identify the particular criminal activity the defendant agreed to jointly undertake rather than the entire conspiracy. *See U.S.S.G.* § 1B1.3 cmt. n.3(B) (U.S. Sent'g Comm'n 2025); *see also Ortiz*, 362 F.3d at 1277–78. Further in this case, Mr. Plasencia did not plead guilty to conspiracy to distribute ketamine, although he did admit, and certainly accepts responsibility for, specific acts which were taken along with Mr. Chavez and Mr. Iwamasa.

### 2. Foreseeability Alone is Insufficient.

Additionally, even if the Court finds that some broader criminal activity were foreseeable, it cannot be attributed to a specific defendant unless it was also within the scope of the jointly undertaken activity and is in furtherance of that activity. *Ortiz*, 362 F.3d at 1276–78; § 1B1.3 cmt. n.3(B). Attributing the distribution of Mr. Plasencia's co-conspirators to him as relevant conduct is not supported by any evidence which satisfies these requirements. To the contrary, the evidence shows a discrete, and limited role for Mr. Plasencia. He evaluated and treated M.P. over the course of thirteen days. And he did so after the patient contacted Mr. Plasencia because his regular physician was unavailable. Mr. Plasencia did not organize, plan, or facilitate any distribution network; he had no

4

communications with or knowledge of, Erik Fleming, Jasveen Sangha, or any street-level supplier or dealer; in fact, he has never even met these two individuals.

As admitted in his plea, Mr. Plasencia did have communication and contact with Mr. Chavez and Mr. Iwamasa on several occasions.  Based on these facts, attributing any broader ketamine distribution conduct by Fleming or Sangha to Mr. Plasencia would improperly extend the purview of § 1B1.3 because there is no evidence that this other drug distribution was within the scope of jointly undertaken activity with Mr. Plasencia or was reasonably foreseeable to him.  *See Ortiz*, 362 F.3d at 1276–78; *U.S.S.G.* § 1B1.3 cmt. n.3(B).  Accordingly, the Court should strike the paragraph in PSR ¶ 41 and find that the relevant conduct in this case is limited to Mr. Plasencia's own actions in treating M.P.[1]

**B. The PSR Incorrectly Analyzes Count Group 1 as Distribution of Ketamine *Resulting in Death* Which Mr. Plasencia Did Not Plead Guilty to**

Mr. Plasencia pleaded guilty to four counts of unlawful distribution of ketamine under 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i), and not a death-resulting offense.  The PSR's grouping caption on page 10, paragraph 46, "Count Group 1: Distribution of Ketamine Resulting in Death," should therefore be corrected to "Count Group 1: Distribution of Ketamine" as it is correctly referred to in the plea bargain.  (Dkt. 76, p2: 5-8) [2].  Additionally, the PSR's Specific Offense Characteristics section on the same page misidentifies the defendant as 'Chavez'; it should read "Mr. Plasencia." (PSR, p. 10 ¶ 47.)

**C.  Mr. Plasencia Qualifies for Safety Valve Relief (U.S.S.G. § 5C1.2)**

The PSR correctly acknowledges that Mr. Plasencia meets the first four criteria for safety-valve relief under 18 U.S.C. § 3553(f) and U.S.S.G. § 5C1.2 and states that "the

---

[1] To the extent any additional, disputed conduct would have an extremely disproportionate effect on the advisory range, the Court should resolve the dispute under Fed. R. Crim. P. 32(i)(3)(B) and U.S.S.G. § 6A1.3, which require that any fact used to increase the range be supported by reliable evidence.  Further, the Court should decline to rely on it for Guidelines purposes if the government's proof is insufficiently reliable, and, in any event, give it little or no weight under § 3553(a).  *See United States v. Lucas*, 101 F.4th 1158, 1160–66 (9th Cir. 2024) (en banc).

[2] By contrast, in Mr. Iwamasa's plea bargain, he admitted to a death-resulting offense: Conspiracy to Distribute Ketamine Resulting in Death.  *United States v. Iwamasa*, CR 24-408-SPG (Dkt. 88, p2: 4-7).

5

Government has not yet confirmed that Plasencia has met the fifth criterion." (PSR, p. 10, ¶¶ 47–48).  However, Mr. Plasencia has also fulfilled the fifth criteria by "truthfully..[having]…provided to the Government all information and evidence the defendant has concerning the offense." 18 U.S.C. § 3553(f)(5).  Mr. Plasencia has fully disclosed and acknowledged his own role in the offense as well as the extent of his knowledge about the case, in the detailed and lengthy factual basis of his plea which spans over five pages.  (Dkt. 76, pp. 6-11).  This factual basis was negotiated by the government and defense counsel based on all facts known to each party.  Mr. Plasencia has not withheld any information and the absence of a formal proffer cannot be construed as a failure to comply where the defendant has no additional material information to provide.  As clearly stated in the newly amended guidelines, "…the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement." *U.S.S.G.* § 5C1.2(a)(5).

Additionally, courts have repeatedly held that the fifth criterion may be satisfied without a formal interview when the defendant's plea, counsel communications, and stipulated factual basis fully disclose the information known to him.  *See United States v. Real-Hernandez,* 90 F.3d 356, 361 (9th Cir. 1996) (any context, so long as truthful and complete); *United States v. Mejia-Pimental*, 477 F.3d 1100, 1107 n.12 (9th Cir. 2007) (written rather than oral proffer is "of no consequence," quoting *Real-Hernandez*).  This is precisely the scenario we have here.  The stipulated factual basis already contains all information known to Mr. Plasencia and the government already possesses all relevant information about the case.  Accordingly, he meets all five statutory criteria under § 3553(f) and § 5C1.2, and the Court should apply a two-level reduction under *U.S.S.G.* § 5C1.2/*U.S.S.G.* § 2D1.1(b)(18).

//

6

**D. Mr. Plasencia Should Also Receive a Two-Level Reduction for Minor Role (U.S.S.G. § 3B1.2(b))**

The PSR correctly describes Mr. Plasencia's role as "limited"; however, it then incorrectly refers to him as an "average participant." (PSR, p. 11 ¶ 52). This criteria is no longer the applicable legal standard. Under the recently amended § 3B1.2 guidelines, a mitigating or minor role adjustment may be imposed "regardless of whether" the defendant was "substantially less culpable than the average participant in the criminal activity." (PSR, p. 10 ¶ 50); *see U.S.S.G* § 2D1.1 (e)(2(B)(ii) (effective Nov. 1, 2025). Further, the minor role analysis now turns on whether a defendant performed a "limited function" and was only accountable for relevant conduct in which he was personally involved. *See* § 3B1.2, cmt. n.3(A) ("A defendant who is accountable under 1B1.3 (Relevant Conduct) only for the conduct in which a defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline.")

Both factors are in Mr. Plasencia's favor. He performed a limited role and his knowledge and actions were limited to his own conduct as argued more extensively above with respect to relevant conduct. Specifically, Dr. Plasencia's actions constituted unlawful distribution because they occurred outside the usual course of professional practice and without a legitimate medical purpose. His compensation was for providing medical treatment, in addition to providing ketamine, and was not contingent upon broader drug trafficking or profit-sharing drug activity. His acts were discrete and involved administering ketamine on several dates and leaving limited quantities for unsupervised use. Unlike Jasveen Sangha and Erik Fleming, Mr. Plasencia did not operate as a street-level supplier and/or distributor who relied on the sale of drugs for profit. Mr. Plasencia did not know of, or ever communicate with, Erik Fleming, Jasveen Sangha, or any street-level supplier. Mr. Plasencia did not coordinate with, direct, or conspire with either of these individuals, nor was he aware of additional ketamine being

7

obtained from them by M.P.  In fact, Mr. Plasencia has never met Jasveen Sangha or Erik Fleming.

Further, Mr. Plasencia's involvement lasted only thirteen days.  His conduct remained confined to a limited and discrete time period, in a physician–patient context that began as legitimate medical treatment for depression.  He interacted only with Mr. Chavez and Mr. Iwamasa and exercised no authority over them or anyone else.  He was not treating M.P. at the time of his death and did not provide the ketamine which resulted in his overdose.  He played no role in planning or organizing, and his decision-making was limited to administering and dispensing ketamine to M.P.  As noted in the PSR, "there is no evidence indicated that Plasencia directed or supervised the conduct of others during the offense."  (PSR, p. 11 ¶ 52); *see also United States v. Diaz,* 884 F.3d 911, 916 (9th Cir. 2018) (minor role adjustment warranted for limited participation without control over others).

Under the new guidelines, "The extent of the adjustment shall be based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case."  The totality of the circumstances in this case show that Mr. Plasencia played a limited and minor role." *U.S.S.G.* § 2D1.2(e)(2)(B)(ii).  Under these facts, Mr. Plasencia is entitled to a two-level reduction for minor role under § 3B1.2(b).

**E. The PSR Applies a Two-Level Enhancement for Obstruction of Justice Which Would Constitute Double Counting for Conduct Already Accounted for in the Pseudo-Count**

The PSR applies a two-level enhancement under U.S.S.G. § 3C1.1, stating that "Plasencia failed to provide all original medical records related to Perry and knowingly provided incomplete and inaccurate medical records, including records that Plasencia modified records after receiving a subpoena." (PSR, p. 12 ¶ 56).  This enhancement constitutes impermissible double counting because the same exact conduct forms the basis

8

of the pseudo-count under 18 U.S.C. § 1519. (Dkt. 76, pp. 11; 13). In fact, the parties specifically stipulated to a higher base offense level in order to account for the obstruction conduct. As such, a separate two-level enhancement under § 3C1.1 based on the same obstruction conduct would be impermissible and constitute double counting because the enhancement does not target "significant further obstruction." § 3C1.1, cmt. n.7. *see also United States v. Fries*, 781 F.3d 1137, 1150–51 (9th Cir. 2015) (upholding § 3C1.1 only where the obstruction-related count did not fully encompass the obstructive conduct; *United States v. Johnson*, 812 F.3d 757, 764–65 (9th Cir. 2016) (in the obstruction-conviction context, § 3C1.1 applies only if there is "significant further obstruction.") There is no evidence of "significant further obstruction" so the two-level enhancement under § 3C1.1 should not be applied.

### F. Mr. Plasencia is a True Zero Point Offender and Should Receive a Two-Level Reduction Under § 4C1.1

The PSR incorrectly states that Mr. Plasencia is not eligible for a two-level reduction under § 4C1.1 because he received an adjustment under § 3B1.1 (Aggravating Role) (PSR, p. 14, ¶ 73). The PSR itself expressly finds that Mr. Plasencia was "an average participant" and did *not* apply an aggravating-role enhancement. (PSR, p. 11 ¶ 52). In fact, Mr. Plasencia meets all criteria under § 4C1.1(a) and therefore should receive a two-level reduction.[3]

---

[3]

1. He was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.
2. He did not receive an adjustment under § 3B1.1 (Aggravating Role).
3. He did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense).
4. The instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights).
5. He did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense.
6. He did not personally cause substantial financial hardship.
7. The instant offense of conviction is not a sex offense.
8. The offense did not result in death or serious bodily injury.
9. He did not use violence or credible threats of violence in connection with the offense.
10. He did not receive any adjustment under § 3A1.4 (Terrorism).
11. He has no criminal history points (Category I)

OBJECTIONS TO THE PRESENTENCE REPORT

## III.   FACTUAL INACCURACY TO BE CORRECTED AND OBJECTION TO FINE

Mr. Plasencia identifies the following factual inaccuracy in the PSR and requests correction pursuant to Fed. R. Crim. P. 32.

### A.  Location of Malibu Canyon Urgent Care

Malibu Canyon Urgent Care Clinic, is located in the city of Calabasas, not Malibu. (PSR, p. 5 ¶17).

### B.  Mr. Plasencia is No Longer a Practicing Doctor and is in Serious Debt

The PSR indicates that Mr. Plasencia's total monthly expenses exceed his monthly income by approximately $13,035 each month. (PSR, p. 21 ¶ 121).  He has significant credit card debt, mortgage debt, and business loan debt. (*Id.*)  Further, he is the sole financial provider for his 2-year-old son.  Mr. Plasencia is responsible for paying for all of his son's basic needs: housing, food, school, and medical.  He pays a minimum of $3500/month for these basic needs and often more.  (PSR, p.21, ¶ 127). Notably, on September 19, 2025, Mr. Plasencia surrendered his medical license and stopped practicing medicine.  Currently, Mr. Plasencia has no source of employment income and has been volunteering at a nonprofit dedicated to food insecurity, Project Angel Food.  Therefore, Mr. Plasencia has no ability to pay a fine and objects to the PSR's proposed fine of $5,600.  (PSR, p. 22 ¶ 129).

### IV.  CONCLUSION

For the reasons set forth above, the PSR should be amended to include all the above reductions (Zero-Point Offender, Safety Valve, and Minor Role), to correct the noted factually inaccuracy, and to no longer recommend the imposition of a fine.

Respectfully submitted,

Dated:  November 5, 2025

*/s/ Debra S. White*
DEBRA S. WHITE
KAREN L. GOLDSTEIN
Attorneys for Salvador Plasencia

10

OBJECTIONS TO THE PRESENCE REPORT