# GERAGOS & GERAGOS

A PROFESSIONAL CORPORATION
LAWYERS
HISTORIC ENGINE CO. NO. 28
644 South Figueroa Street
Los Angeles, California  90017-3411
Telephone  (213) 625-3900
Facsimile  (213) 232-3255
Geragos@Geragos.com

MARK J. GERAGOS          SBN 108325
ALEXANDRA KAZARIAN       SBN 244494
*Attorneys for Defendant*, JASVEEN SANGHA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 2:24-cr-00236-SPG |
| Plaintiff, | **DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM** |
| v. | |
| JASVEEN SANGHA, | |
| Defendant. | |

## SENTENCING MEMORANDUM

### I.   INTRODUCTION

Defendant Jasveen Sangha appears before the Court having accepted responsibility for serious criminal conduct. She does not minimize that conduct or the gravity of the consequences charged in this case. The question at sentencing is what sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a).

1

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

The PSR overstates the advisory United States Sentencing Guidelines (the "Guidelines") range in several respects. It relies on a facially and factually wrong drug-quantity calculation, applies contested enhancements, and withholds the third acceptance point despite the plea agreement and the timing of Ms. Sangha's plea. Properly calculated, the advisory range is materially lower. But even apart from the correct Guidelines calculation, the § 3553(a) factors support a substantial downward variance.

Ms. Sangha has no prior criminal history. She has maintained sustained and exemplary sobriety, and actively engaged in recovery-oriented and rehabilitative programming while in custody, and has tremendously strong family and community support to facilitate successful reentry and reduce the risk of recidivism. She has been detained since August 15, 2024, and has used that time wisely and productively, participating in programming, and supporting others in recovery.

For those reasons, and for the reasons set out below, the Court should impose a sentence below the range recommended in the PSR and no greater than necessary to accomplish the purposes of sentencing.

## II.     STATEMENT OF THE CASE

Ms. Sangha incorporates and refers the Court to the facts stipulated to by the parties in Ms. Sangha's signed plea agreement.

On September 3, 2025, Ms. Sangha entered a plea of guilty to counts 2, 3, 11, 12, and 13 of the First Superseding Indictment pursuant to a plea agreement with the United States Attorney's Office ("USAO"). Count Two alleged a violation of 21 U.S.C. § 856(a)(1) for knowingly maintaining a place for the purpose of distributing or using controlled substances. Count three alleged a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i) and 18 U.S.C. § 2(b) for the knowing, intentional, and willful distribution of ketamine. Count eleven (11) alleged a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i) and 18 U.S.C. § 2(a) for aiding and abetting, knowingly and intentionally, in the distribution of ketamine. Count twelve (12) alleged a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i); 18 U.S.C. § 2(a) for aiding and abetting,

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

knowingly and intentionally, in the distribution of ketamine. Count thirteen alleged a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(E)(i); 18 U.S.C. § 2(a) for aiding and abetting, knowingly and intentionally, in the distribution of ketamine, the use of which resulted in death and serious bodily injury.

The plea agreement outlines the charged conduct, but it does not establish the full drug quantity attributed in the PSR with sufficient and almost no demonstrable indicia of reliability.

## III.    THE PSR OVERSTATES THE ADVISORY GUIDELINE RANGE

Pursuant to the Plea Agreement entered into by Ms. Sangha and the United States Attorney's Office, the parties have not stipulated to a Guideline calculation and have agreed the parties may argue any applicable guideline range, departures, and variances:

> Except as set forth in paragraph 4(d) above, defendant and the USAO have no agreement as to the appropriate sentence or the applicable Sentencing Guidelines factors. Except as set forth in paragraph 4(d), both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history score and category, base offense level, specific offense characteristics, adjustments, departures, and variances.

*See* Plea Agreement at 16, ECF No. 85.

Consistent with that agreement, Ms. Sangha objects to the PSR's drug-quantity calculation, the proposed enhancements, and the denial of the third acceptance point.

### A. The PSR Drug Quantity Has Not Been Established by Sufficiently Reliable Evidence

The PSR asserts that Ms. Sangha "possessed at least 1.5 kilograms of methamphetamine" based on the alleged recovery by law enforcement of approximately 1,727.27 grams of orange pressed pills containing methamphetamine. That conclusion overstates the quantity and is not supported by sufficiently reliable evidence.

Under § 2D1.1 of the Guidelines, the Court must determine drug quantity based on either the total weight of a mixture or substance containing a detectable amount of methamphetamine, or the weight of the actual methamphetamine contained within that mixture, whichever results in the greater offense level. See U.S.S.G. § 2D1.1 cmt. n.(A), (B)

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

(Nov. 1, 2025). This framework requires a reliable factual basis for determining both the composition and quantity of the substance at issue.

Here, the PSR relies on DEA laboratory testing of only a tiny subset of the seized pills, reporting methamphetamine purities of approximately 4.3%, 4.6%, and 4.7%. Those extremely low purity figures underscore the unreliability of extrapolating across the entire seizure and confirm that the Court should not attribute the full seized weight to methamphetamine absent a rigorously supported quantity determination. Needless to say, that has not been done.

The problem, however, is not simply that the pills were impure. For guideline purposes, the weight of a mixture or substance containing a detectable amount of methamphetamine may be used. The real problem is that the present record does not establish, with sufficient reliability, that the tested pills were representative of the entire 1,727.27-gram seizure. On this record, the Court should not attribute the full seizure weight to methamphetamine without evidence showing that the sample reliably supports that conclusion.

The United States Probation Office's quantity calculation depends on extrapolation from a very small statistically insignificant sample. According to the PSR, only 27 pills were tested, yet those results were extrapolated to the full seizure. The record is devoid of show how those pills were selected, whether the seized pills were uniform in appearance or composition, or whether the tested pills were representative of the larger lot. Without that foundation, the extrapolation lacks any sufficient indicia of reliability to support the quantity attributed in the PSR.

At sentencing, the government must establish drug quantity by a preponderance of the evidence using information that provides a reliable basis for the Court's determination. See *United States v. Culps*, 300 F.3d 1069, 1076 (9th Cir. 2002) (requiring reliable support for drug quantity estimates and caution in approximations); *United States v. Kilby*, 443 F.3d 1135, 1141–42 (9th Cir. 2006) (requiring that extrapolated drug quantities be supported by sufficiently reliable evidence). Where drug quantity is based on extrapolation, there must be

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

4

some showing that the sample supports applying those results to the larger quantity. No such showing has been made here, and the government has not met its burden to support the higher quantity.

### B. The Premises and Role Enhancements are Unsupported

### i.     The Record Does Not Support Application of the Premises Enhancement

The two-level enhancement under U.S.S.G. § 2D1.1(b)(12) applies only if the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance. As the commentary makes clear, drug distribution need not be the sole purpose of the premises, but it must be one of the defendant's "primary or principal uses," determined by comparing how frequently the premises was used for drug distribution with how frequently it was used for lawful purposes. U.S.S.G. § 2D1.1 cmt. n.17.

Here, the issue is not whether the residence was used in connection with drug activity. The plea agreement and the PSR establish that it was. For instance, controlled substances were found in the residence. But those facts do not by themselves answer the narrower guideline question, which is whether drug distribution, rather than ordinary residential living, was one of the premises' primary or principal uses.

The record still shows that the apartment was Ms. Sangha's home.  She lived there, slept there, and kept her personal belongings there. When agents executed the search warrant, they found her in bed in the master bedroom, and ordinary residential effects were present throughout the apartment. That matters because § 2D1.1(b)(12) does not apply whenever a defendant both lives in a residence and uses it at times in connection with selling drugs. The enhancement applies only when the government shows that distribution was one of the residence's principal uses in comparative terms.

That showing is missing here. The government has evidence of drugs, cash, packaging materials, a scale, and some transactions tied to the apartment. But the evidence does not establish the comparative frequency necessary to show that drug distribution was a primary

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

use of the home versus the home being used as a residence. There is no developed record of regular customer traffic, no surveillance showing the apartment functioning as a continuing storefront, and no meaningful comparison between the residence's lawful day-to-day use as a home and its unlawful use in connection with drug transactions.

The quantity and variety of substances recovered do not, by themselves, establish that drug distribution was one of the residence's primary or principal uses. Nor do the instances in which drugs were picked up from the residence or lockbox automatically transform a home into a drug premises within the meaning of § 2D1.1(b)(12). On this record, the government has shown that the residence was used for drug-related activity, but it has not shown that drug distribution, rather than ordinary residential living, was one of the premises' primary or principal uses.

The Court should therefore decline to apply the premises enhancement.

### ii. The Record Refutes a Finding that Ms. Sangha was a Leader or Organizer

Section 3B1.1 requires proof that the defendant exercised control over at least one participant or organized participants for the purpose of carrying out the offense. Importance to the scheme, facilitation, or organization of property and activities is not enough. See *U.S. v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012); *U.S. v. Holden*, 908 F.3d 395, 402 (9th Cir. 2018). The examples identified in the PSR show coordination, not control. Asking Kevorkian to leave drugs in a lockbox, coordinating pickup times, or using Taylor to make deliveries may show participation in distribution, but they do not by themselves establish decision-making authority, profit-allocation authority, or hierarchical control over another participant.

Applied here, the record points away from leadership and toward supplier dependence. Ms. Sangha described obtaining ketamine from an upstream source and reselling it, not directing a team beneath her. The PSR's examples, including coordination with Kevorkian and Taylor, may show participation in distribution, but they do not establish hierarchical authority over another participant. Under *Whitney* and *Holden*, that is not enough for § 3B1.1.

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

### C.  The Obstruction Enhancement Should Not Apply

The two-level obstruction enhancement under U.S.S.G. § 3C1.1 applies only if the Court finds that the defendant willfully obstructed or attempted to obstruct the administration of justice with respect to the investigation, prosecution, or sentencing of the offense. That requirement is not satisfied by conduct that merely appears suspicious or damaging in hindsight. It requires a finding that the defendant acted with the conscious purpose of obstructing justice. See U.S.S.G. § 3C1.1; *United States v. Ho-Romero*, 167 F.4th 1037, 1044-45 (9th Cir. 2026).

The record here requires careful treatment of that mens rea requirement. The PSR states that, after learning of MP's death from news reports, Ms. Sangha called Erik Fleming on Signal, changed the settings so the messages would automatically delete, and told him to "Delete all our messages." The PSR also cites Fleming's later Signal message stating that he was "90% sure everyone is protected" and referring to a "3 month tox screening." The relevant question is whether the government can show, by a preponderance of the evidence, that Ms. Sangha acted with the specific purpose of obstructing a foreseeable investigation, rather than reacting in panic to a sudden, highly publicized death and the immediate fear of exposure.

That distinction matters under *Ho-Romero*. There, the Ninth Circuit vacated a § 3C1.1 enhancement because the district court had not made the required mens rea finding and had treated threatening conduct as enough without determining whether the defendant acted with the specific intent to obstruct justice. The same principle applies here. Before imposing the enhancement, the Court should make a specific finding that the deletion-related conduct was undertaken with the conscious purpose of obstructing a foreseeable investigation, and not merely as a panicked reaction in the immediate aftermath of a highly publicized death of a celebrity. Absent that finding, § 3C1.1 should not apply.

Nor does the record support the enhancement merely because Ms. Sangha used encrypted applications such as Signal and WhatsApp. The use of encrypted messaging applications, without more, is not itself obstruction. The enhancement rises or falls on intent.

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

For those reasons, the Court should decline to apply the obstruction enhancement on the present record.

### D. Ms. Sangha is Entitled to the Full Reduction for Acceptance of Responsibility

Ms. Sangha should receive the full three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The PSR awards the two-level reduction under § 3E1.1(a) but withholds the additional one-level reduction under § 3E1.1(b). That conclusion does not fit either the plea agreement or the timing of the plea.

Section 3E1.1(b) requires a government motion. In the plea agreement the government expressly agreed that, provided Ms. Sangha continued to demonstrate acceptance of responsibility through sentencing, it would recommend the two-level reduction under § 3E1.1 and "recommend and, if necessary, move for an additional one-level reduction if available under that section." *See* Plea Agreement at 5, ECF No. 85. The PSR likewise reflects that the government conditionally agreed to recommend up to a three-level reduction for acceptance of responsibility.

There is no principled basis to withhold that third point consistent with the plea agreement. Ms. Sangha executed the plea agreement on August 14, 2025. This was more than five weeks before the then-scheduled September 23, 2025 trial date. That timing avoided a multi-day trial and permitted the government and the Court to conserve substantial trial-preparation resources.

The purpose of § 3E1.1(b) is to reward timely guilty pleas that permit the government to avoid preparing for trial and allow the Court to allocate its resources efficiently. That is exactly what occurred here. Ms. Sangha accepted responsibility by entering a guilty plea and resolving the case well ahead of the trial date, thereby avoiding a multi-day trial and conserving prosecutorial and judicial resources.

Accordingly, the Court should find that Ms. Sangha has satisfied the requirements for the full acceptance reduction and should calculate the advisory range using all three levels under § 3E1.1.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

8

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

### E. Resulting Guidelines Calculation

The PSR calculates a base offense level of 32, applies a two-level premises enhancement, a two-level aggravating-role enhancement, and a two-level obstruction enhancement, and then subtracts only two levels for acceptance of responsibility, for a total offense level of 36. On the defense calculation, the correct base offense level is 26, the premises, role, and obstruction enhancements do not apply, and Ms. Sangha is entitled to the full three-level reduction for acceptance of responsibility. That results in a total offense level of 23. With a Criminal History Category I, the resulting advisory Guidelines range is 46 to 57 months.

## IV.    A BELOW-GUIDELINES SENTENCE IS WARRANTED UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), the Court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing. Although the advisory Guidelines range is one factor the Court must consider, it is not controlling, and the Court has discretion to impose a non-Guidelines sentence where warranted. See *United States v. Booker*, 543 U.S. 220 (2005); *Gall v. United States*, 552 U.S. 38 (2007).

Here, the § 3553(a) factors support a sentence below the advisory Guidelines range. Ms. Sangha has accepted responsibility for serious conduct, has no prior criminal history, and has demonstrated sustained rehabilitation, including two years of sobriety and consistent engagement in recovery programming while in custody. She has strong family and community support and presents a low risk of recidivism. In these circumstances, a below-Guidelines sentence is sufficient to satisfy the purposes of sentencing.

A sentence below the advisory range would still reflect the seriousness of the offense, promote respect for the law, and provide just punishment, while also accounting for Ms. Sangha's actual role, her lack of criminal history, and her substantial post-arrest rehabilitation.

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

### A. *Ms. Sangha Has Accepted Responsibility for Serious Conduct*

Ms. Sangha has also accepted responsibility in a way that matters beyond the Guidelines calculation. She pleaded guilty, admitted the factual basis of the offenses, and spared the Court, the government, and the witnesses the burden of a lengthy trial. More important, her conduct since arrest reflects actual accountability rather than a merely formal plea. As set out below she has used her time in custody to maintain sobriety, participate in programming, and begin building a lawful and stable release plan. Those steps do not erase the seriousness of the offense, but they do demonstrate that she has confronted it, accepted responsibility for it, and taken meaningful steps to ensure it is not repeated. That acceptance of responsibility supports a sentence that recognizes both the seriousness of the conduct and the substantial progress she has made while in custody.

### B. *Her Personal History and Characteristics Support Leniency*

#### i. Family History

Ms. Sangha was born on July 22, 1983 in London, England. She lived there until she was three years old before immigrating to the United States. During her early life, her family moved frequently, living in Pennsylvania, New York, and Northern California before settling in Calabasas, California in 1993.

Ms. Sangha has never known her biological father and has no siblings, aside from two half-brothers of whose existence she is aware but with whom she has no relationship and has never met. Although her parents were formally married, the marriage was arranged and her father was functionally absent, leaving her without any meaningful paternal support or guidance during her upbringing.

The most significant male figures in Ms. Sangha's life were her grandfather and stepfather. Her grandfather passed away in 2023, and her stepfather passed away in February 2025. These losses had a profound impact on her.

Despite these challenges, Ms. Sangha has maintained strong family relationships. Ms. Sangha maintains an extremely close relationship with her mother, maternal grandmother, and

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

maternal uncle. Her uncle, Sukhpal Paul Singh ("Mr. Singh") describes Ms. Sangha as "very much engaged with her family and friends and loved by all for her smile and kindness." *See Exhibit A, Character Letter (Sukhpal Paul Singh).* He further explains that she is "filled with compassion and is very empathetic and selfless," noting that she has opened her home to friends in need and consistently gone beyond expectations to help others. He emphasizes that she "would never harm another person intentionally" and is remorseful for what occurred. Her family remains committed to supporting her upon release. *Id.*

These sentiments are echoed by other family members. Ms. Sangha's uncle, Surinder Channa, describes her as "thoughtful and compassionate" and notes that he has never known her to act with aggression or malice. *See Exhibit A, Character Letter (Surinder Channa).* Her cousin, Rosina Basi, similarly describes her as honest, responsible, and someone she has trusted throughout her life. *See Exhibit A, Character Letter (Rosina Basi).*

### ii.  Education and Employment

Ms. Sangha graduated from Calabasas High School in 2001 and went on to attend the University of California, Irvine from 2001 to 2005, where she obtained a Bachelor of Arts in Sociology. *See Exhibit B, School Certificates.* She later obtained a Master of Business Administration at Hult International Business School in England in approximately 2010. When she returned from England, she worked for Subway Corporation through its business OhCal Foods from approximately 2012-2014, where she was responsible for a wide range of tasks, including training, leasing, auditing, health department compliance, and advertising regulation compliance. She later started her own business, Stiletto Nail Bar in Studio City, California, which operated from 2015 to 2017. Beginning in 2018, Ms. Sangha became involved in the Los Angeles art community, organizing pop-up art shows and supporting artists. Upon release, she intends to return to consulting with artists and contributing to the community.

Ms. Sangha also hopes to become involved in prison reform efforts, including improving conditions for incarcerated individuals and strengthening family connections. She is passionate about ensuring that prisons obtain better conditions for incarcerated persons, that

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

incarcerated persons are provided with the appropriate rehabilitative tools, and strengthening the ties that incarcerated persons have with their families. Ms. Sangha hopes to assist in bringing women and their families closer together, potentially through coordinated family days.

### iii.  Health

In 2012, at the age of approximately 29, Ms. Sangha had a cancerous tumor on her ovary that was fortunately removed in time, and she has remained cancer-free since.

In 2018, she began experiencing significant bladder pain and frequent urination, later diagnosed in approximately 2020 as ulcers on her bladder. She underwent surgeries in 2020 and 2022 to address this condition. Prior to her arrest, she was in the process of arranging a third surgery, which she has been unable to obtain while incarcerated. She continues to experience symptoms and hopes to undergo this procedure in the near future.

### iv.  Community Ties

The letters submitted on Ms. Sangha's behalf reflect a consistent theme: she is known as a compassionate, selfless, and reliable person who shows up for others in meaningful ways. Ms. Perla Hudson, one of Ms. Sangha's close friends, describes Ms. Sangha as being like a "little sister" to her and a "fairy godmother" to her sons. *See Exhibit A, Character Letter (Perla Hudson)*. Ms. Sangha showed up for Ms. Hudson in one of the most difficult times of her life and, unlike others, "wasn't there to take, only to give." *Id.* Ms. Hudson notes that "Jasveen is not a danger to society—she is someone who, when given the chance, will continue to enrich and uplift those around her." *Id.*

Ms. Sangha's giving character is further emphasized in a letter to the Court from her friend of approximately 17 years, Imran Opel, who explains the impact Ms. Sangha has had on their life: "I have seen Jasveens character shine through in countless ways, through loyalty, compassion and an unshakeable commitment to doing good. One moment defines her: A few years ago I was in crisis after a long term relationship ended. Jasveen rearranged her schedule, took time off to support me. She helped me pack, move and offered strength when I had none

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

- that kind of selflessness is who Jasveen is at [her] core." *See Exhibit A, Character Letter (Imran Opel).*

These same themes are echoed across the remaining letters submitted to the Court. Individuals who have known Ms. Sangha for many years, including lifelong friends and those who have known her since childhood, consistently describe her as compassionate, dependable, and deeply committed to her family and community. Across these accounts, she consistently emerges as someone who supports others through difficult circumstances, maintains long-standing relationships, and acts with empathy and generosity in her daily life.

*C. Her Post-Offense Rehabilitation is Substantial and Documented*

Ms. Sangha previously struggled significantly with substance use but has maintained two years of sobriety as of March 19, 2026. She ceased using controlled substances upon her release on pretrial supervision and has remained sober throughout her incarceration. Since her arrival at the Metropolitan Detention Center in 2024, Ms. Sangha has consistently attended Alcoholics Anonymous meetings every Tuesday morning. When formal drug treatment programming was unavailable in the women's unit from 2024 to 2025, she took the initiative to organize and lead Narcotics Anonymous meetings every Saturday morning. Ms. Sangha has taken on significant responsibility within her unit, holding a range of work assignments from cleaning showers, sweeping, mopping, and food service, to serving as a TRULINCS orderly and ultimately as the head sanitation orderly. In that role, she is responsible for maintaining inventory of cleaning supplies, chemicals, and women's sanitary products, assisting the Unit Manager and Unit Counselor in ensuring the orderly operation of the unit.

In addition to her work assignments, Ms. Sangha has participated in institutional programming and has obtained certificates of completion for programs including the "New Beginnings Treatment Group" and the "Assert Yourself Treatment Group." *See Exhibit C, Certificates.*

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

13

### D. *Ms. Sangha Presents a Low Risk of Recidivism and Has a Concrete Release Plan*

Ms. Sangha has zero criminal history points, placing her in Criminal History Category I, and no prior arrests or convictions. This, combined with her sustained sobriety and conduct while incarcerated, reflects a low likelihood of recidivism.

Upon release, Ms. Sangha plans to reside with her mother and grandmother in a stable and supportive environment.

Ms. Sangha is unlikely to reoffend, particularly in light of her lack of criminal history, sustained sobriety, rehabilitative programming while in custody, and stable release plan with family support.

### E. *A Lengthy Additional Custodial Term is Greater than Necessary*

The Guidelines range sentence remains greater than necessary in this case. Ms. Sangha has been continuously incarcerated since August 2024 and has used that time to achieve sustained sobriety, engage in programming, and assume meaningful responsibility within her unit.

At 42 years old, with no prior criminal history and a demonstrated commitment to change, Ms. Sangha presents a low risk of recidivism. Given her rehabilitation and strong release support, additional incarceration would not meaningfully advance deterrence, protection of the public, or rehabilitation. A sentence of time served is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

### F. *A Guidelines Sentence Would Create an Unwarranted Disparity*

18 U.S. Code § 3553(a)(6) does not require identical sentences among co-defendants, but it does require the Court to consider whether the sentence imposed creates an unwarranted disparity in light of relative culpability and the need for proportionality. See 18 U.S.C. § 3553(a)(6); *United States v. Treadwell*, 593 F.3d 990, 1011 (9th Cir. 2010). That issue is concrete here, because the Court has already imposed sentence on two co-defendants whose conduct placed them in more direct proximity to MP and to the events leading up to his death.

For instance, Dr. Salvador Plasencia, who personally injected MP with ketamine and left additional ketamine with Kenneth Iwamasa knowing Iwamasa would administer it,

14

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

received a sentence of 30 months' imprisonment. Dr. Mark Chavez, who supplied ketamine to Plasencia for redistribution, received a non-custodial sentence of home confinement, supervised release, and community service. Those sentences do not control Ms. Sangha's sentence, but they are relevant points of comparison when assessing proportionality under § 3553(a).

The record also shows that the participants occupied different roles. According to the PSR, Iwamasa repeatedly injected MP with ketamine, including on October 28, 2023. The PSR further states that Fleming acted as the intermediary between Sangha and Iwamasa, arranging purchases, picking up cash, obtaining ketamine from Ms. Sangha, and delivering it onward to MP through Iwamasa. As to Ms. Sangha, the offense conduct does not establish that she personally administered ketamine to MP, exercised medical authority over him, or occupied a supervisory role over the other participants.

A sentence must reflect the defendant's own conduct and role, not a generalized account of the broader conspiracy. See *Gall v. United States*, 552 U.S. 38, 50 (2007). Here, the record does not support treating Ms. Sangha as more culpable than participants who personally injected MP, operated from positions of medical authority, or served as the direct conduit through which the ketamine reached him. Nor does the record support treating her as a leader or organizer for purposes of sentencing parity when the defense has separately objected to those enhancements and the PSR itself identifies others as the persons who administered the drugs and carried out face-to-face transfers.

If the Court were to impose a Guidelines sentence driven by contested enhancements for maintaining a drug premises, aggravating role, or obstruction, the result would risk placing Ms. Sangha above co-defendants whose conduct was more direct in its connection to the end user and to the fatal events. § 3553(a) does not require that result. It requires a sentence sufficient, but not greater than necessary, to account for Ms. Sangha's actual role, her acceptance of responsibility, her lack of criminal history, and the sentences already imposed in this case.

GERAGOS & GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

15

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM

A below-Guidelines sentence is therefore necessary to avoid an unwarranted disparity and to ensure that Ms. Sangha's sentence remains proportional to her conduct and to the sentences this Court has already imposed.

## V.    CONCLUSION

For the foregoing reasons, a sentence within the advisory Guidelines range would be greater than necessary to satisfy the purposes of sentencing under 18 U.S.C. § 3553(a). Ms. Sangha's demonstrated rehabilitation, including two years of sustained sobriety, consistent engagement in recovery programming, and strong community support, reflects a meaningful commitment to change and a low risk of recidivism.

Having been continuously incarcerated since August 2024 and having used that time to make substantial progress toward rehabilitation, further custodial time would not meaningfully advance the goals of sentencing.

Accordingly, Ms. Sangha respectfully requests that the Court impose a sentence of time served, followed by appropriate conditions of supervised release.

DATED:  March 25, 2026

GERAGOS **&** GERAGOS, APC

By: */s/ Alexandra Kazarian*

MARK J. GERAGOS
ALEXANDRA KAZARIAN
*Attorneys for  Defendant,*
JASVEEN SANGHA

GERAGOS **&** GERAGOS, APC
HISTORIC ENGINE CO. No. 28
644 South Figueroa Street
Los Angeles, California 90017-3411

16

DEFENDANT JASVEEN SANGHA'S SENTENCING MEMORANDUM